UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DWAYNE MILES

VERSUS

KILOLO KIJAKAZI, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

CIVIL ACTION

NO: 23-7327

SECTION: "A" (4)

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 19)**, filed by Plaintiff Dwayne Miles.[1] The underlying cause of action is a claim for judicial review of a final decision entered by the Commissioner of Social Security ("Commissioner") pursuant to the Social Security Act ("Act").[2] For the reasons explained below, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

## I.    BACKGROUND

### i.    *Procedural History*

On March 19, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental income.[3] The Social Security Administration initially denied these claims on January 10, 2022, and denied them on reconsideration on June 28, 2022.[4] Thereafter, Plaintiff filed a written request for hearing that the

---

[1] Plaintiff's brief is titled "Motion for Summary Judgment," but the Court notes that this action is not governed by Federal Rule of Civil Procedure 56. *See* Rec. Doc. 19.

[2] Rec. Doc. 1.

[3] Rec. Doc. 12, Administrative Law Judge Decision, at CM/ECF p. 22. Hereafter, all pin citations to the record of proceedings held before the Social Security Administration (Rec. Doc. 12), will correspond with the page number listed in the CM/ECF heading.

[4] *Id.*

Social Security hearing office received on July 19, 2022.[5]  On March 23, 2023, Administrative

Law Judge ("ALJ") Holly Hansen held a hearing on the matter by telephone, and issued a ruling

denying Plaintiff's claim on May 2, 2023.[6] The instant claim for judicial review followed the

ALJ's decision, and was referred to United States Magistrate Judge Karen Roby pursuant to 28

U.S.C. § 636(b) and Local Rule 73.2(B). A report and recommendation affirming the ALJ's

decision was issued by the Magistrate Judge on November 12, 2024, and Plaintiff's objections to

the Report and Recommendation were timely filed on November 26, 2024.[7]

### ii.    *Factual Background*

Plaintiff is a 52-year-old male who last worked as a crane operator in October 2019, and,

according to the ALJ's decision, meets the insured status requirements of the Act through

December 31, 2025.[8] He contends that he is disabled due to heart problems, memory loss, high

blood pressure, anxiety, depression, vision problems, and vertigo.[9] As the result of a dissection of

ascending aorta, he alleges he is unable to stand for long periods of time, he has neuropathy in

both hands and feet, and he suffers from dizziness, shortness of breath, heart palpations, and leg

cramps.[10]

---

[5] *Id.*

[6] *See generally id.*, at 22–42.

[7] Rec. Doc. 22; Rec. Doc. 23.

[8] Rec. Doc. 12, at 261, 271. The Court notes that there is an apparent discrepancy in the ALJ's decision regarding Plaintiff's date of last insured ("DLI"). The decision states Plaintiff's DLI is December 31, 2025, but the Findings of Fact list a DLI of December 31, 2024. *Compare id.* at 22, *with id.* at 88.

[9] *Id.* at 114.

[10] *Id.* at 280.

## II.    LEGAL STANDARDS

### i.    *District Court Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of a disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Chrisner v. Asture*, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923*; Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884,

at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)); *see also Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009) ("The federal 'harmless-error' statute . . . tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'"). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Wilder*, 2014 WL 2931884, at *5 (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## ii.    The Sequential Evaluation Process[11]

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)). The Act defines "disability" as the inability to engage in substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.*; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)–(f)). On the first four steps of the analysis, the claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to

---

[11] Here, the relevant provisions covering the Sequential Evaluation Process are the same under Part 404 (governing Social Security Disability Insurance) as under Part 416 (governing Supplemental Security Income). *Compare* 20 C.F.R. §§ 404.1520–404.1523, *with* §§ 416.920–416.924b. The Court will cite only the provisions in Part 404, not the corresponding provisions in Part 416.

the Commissioner on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id.* "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis*." Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

At step one, the ALJ must determine whether the claimant is engaged in SGA. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in SGA, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have a severe impairment or combination of impairments, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* §§ 404.1520(d), 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments*. See id.* § 404.1520(e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If an individual's impairment precludes him or her from performing past work, the analysis proceeds to the fifth and

final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III.    THE ALJ'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her May 2, 2023 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.  The claimant has not engaged in substantial gainful activity since February 21, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.  The claimant has the following severe impairments: dissection of thoracic aorta and aortic arch replacement, after aortic dissection repair, with residuals; systolic murmur; lumbar degenerative disc disease; vertigo; hypertension; obesity; anxiety disorder; depressive disorder; and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger with each hand. He can never be exposed to unprotected heights or dangerous machinery. The claimant can perform simple, routine, and repetitive work with occasional interaction with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on April 26, 1972 and was 48 years old, which is categorized as a younger individual age 18 to 49 years old, on the alleged disability onset date. On April 25, 2022, the claimant changed age category to closely approaching advanced age, 50 to 54 years old (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Rec. Doc. 12, at 24–42).

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, filed on March 19, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Act.[12]

## IV.   ANALYSIS

On appeal, Plaintiff broadly asserts five points of error, but the scope of his argument is limited to the ALJ's evaluation of his mental impairments.[13] He principally argues: (i) the medical evidence in the record establishes that his impairments meet or medically equal the criteria of Listing 12.04 and his non-exertional limitations from his mental impairment erode the occupational work base under SSR 85-15; and (ii) the ALJ failed to properly consider the opinions

---

[12] Rec. Doc. 12, at 41.

[13] Rec. Doc. 19, at 5, 17–19.

of his treating psychologist, Dr. Bertha Williams, Ph.D., and the state-appointed neuropsychologist, Dr. Samuel Sentell, Ph.D.[14]

The Commissioner argues in response that "The ALJ properly evaluated the opinions in accordance with the applicable regulations and found Dr. Williams' opinion unpersuasive and Dr. Sentell's opinion partially persuasive considering the factors of supportability and consistency."[15] In making its argument, the Commissioner emphasized that,

> Under the revised regulations for considering opinion evidence, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."

(Rec. Doc. 21, at 3 (quoting 20 C.F.R. § 404.1520c(a)).

Upon review of the ALJ's decision, the opinions of Dr. Williams and Dr. Sentell, and the record as a whole, the Court is compelled to remand for further administrative proceedings for the following reasons: *first*, the ALJ's analysis in step three of the sequential evaluation process is insufficient; and *second*, the ALJ's misinterpretation of medical evidence may have prejudiced Plaintiff's substantive rights.

i. ***The ALJ insufficiently analyzed Plaintiff's mental impairments under the third step of the sequential evaluation process.***

a. **Step three overview**

In the second step of the sequential evaluation process the ALJ determined that Plaintiff's anxiety, depressive, and adjustment disorders are severe impairments.[16] Accordingly, the analysis proceeds to step three, where the ALJ must determine whether the impairments meet or medically

---

[14] *Id.* at 17.

[15] Rec. Doc. 21, at 3.

[16] Rec. Doc. 12, at 25.

equal the criteria of the relevant Listing in Appendix 1. 20 C.F.R. § 404.1520(d). If Plaintiff meets the criteria and the duration requirement in Section 404.1509, then he is disabled. *Id.*; *Whitehead v. Colvin*, 820 F.3d 776, 780–81 (5th Cir. 2016). The Listing describes impairments that the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). The relevant Listings here are 12.04 (depressive disorder) and 12.06 (anxiety disorder). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04 and 12.06.

Listings 12.04 and 12.06 each have three paragraphs, designated A, B, and C; and Plaintiff's mental impairments must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. *Id.* § 12.00(A)(2). Paragraph A of each listing includes the medical criteria that must be present in Plaintiff's medical evidence. *Id.* § 12.00(A)(2)(a). In Listing 12.04, a claimant must have medical documentation of five or more of the Paragraph A criteria for depressive disorders.[17] *Id.* § 12.04. Listing 12.06, which comprises anxiety disorder, requires the claimant's disorder be characterized by at least three of the respective Paragraph A criteria. *Id.* § 12.06. Some, but not all, of the Paragraph A criteria in Listing 12.06 overlap with the criteria in Listing 12.04.[18] In an action for judicial review, the plaintiff bears the burden of showing that his impairment "meet[s] all of the specified medical criteria." *Whitehead*, 820 F.3d at 781.

---

[17] The Paragraph A criteria for Listing 12.04 include: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; or difficulty concentrating or thinking.

[18] The Paragraph A criteria for Listing 12.06 include: restlessness; easily fatigued; difficulty concentrating; irritability; muscle tension; or sleep disturbance.

The four areas of mental functioning, also known as "Paragraph B" criteria, are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)–(4), 12.04(B)(1)–(4), 12.06(B)(1)–(4).[19] A mental impairment is generally considered medically equal to a Listing where there is an "extreme" limitation in one, or "marked" limitation in two, of the four areas of mental functioning. *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865, at *2 (5th Cir. July 12, 2023) (summarizing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(d)–(e)). An extreme limitation means that the claimant *is not able* to function in the respective area of mental functioning independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(e). A marked limitation means that functioning independently, appropriately, effectively, and on a sustained basis in the respective area *is seriously limited*. *Id.* § 12.00(F)(2)(d). When the ALJ evaluates a mental disorder in step three, the ALJ must "use all of the relevant medical and non-medical evidence in [the claimant's] record to evaluate [the disorder]." *Id.* § 12.00(F)(3)(a).[20]

The step three determination of whether an impairment meets a Listing is entirely different from the step two determination of severity. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("Even if the degree of impairment is 'severe,' the regulations require an assessment of whether the impairment meets or exceeds the criteria of a [Listing].") To determine whether a mental impairment satisfies the requirements of a specific Listing and renders a claimant presumptively disabled, the agency must use a psychiatric review technique prescribed by 20 C.F.R. § 404.1520a.

---

[19] The Paragraph B criteria are the same for both Listings.

[20] *See also id.* § 12.00(C)(2) ("We will consider all relevant medical evidence about your disorder from your physician, psychologist, and other medical sources, which include health care providers such as physician assistants, psychiatric nurse practitioners, licensed clinical social workers, and clinical mental health counselors.").

Using this technique, the ALJ rates the claimant's functional limitations in the four areas of mental functioning on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4); *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00F(2)(b). The ALJ must document the application of the technique in his decision by showing the history, examinations, and findings, and the ALJ must be specific about each functional area. *See* 20 C.F.R. § 404.1520a(e)(4).

### b. The ALJ's decision insufficiently examined an area of mental functioning.

The ALJ's decision states in conclusory fashion that "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."[21] As a threshold matter, the decision lacks an analysis of the Paragraph A criteria; however, it is not uncommon to omit this analysis if the Paragraph B criteria are unmet. *See, e.g.*, *Kemp v. Kijakazi*, No. 4:22-cv-00231, 2023 WL 2249162, at *4 (S.D. Tex. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 303372 (S.D. Tex. Mar. 15, 2023) (noting the ALJ skipped the Paragraph A analysis and instead proceeded straight to analyzing the Paragraph B criteria "because [the claimant's] ability to satisfy paragraph A's requirements alone would be insufficient if he could not also satisfy one of the latter"); *Meador v. Kijakazi*, No. 5:22-cv-00043, 2023 WL 6780523, at *11 (E.D. Tex. Aug. 2, 2023), *report and recommendation adopted*, 2023 WL 6159816 (E.D. Tex. Sept. 21, 2023) (same).

As it relates to the Paragraph B criteria, the ALJ formed her basis for whether Plaintiff's impairments meet or medically equal the criteria of the relevant Listing in Appendix 1 almost exclusively on the medical evidence provided by Dr. Sentell.[22] The analysis is summarized in the paragraphs that follow and organized according to the four areas of mental functioning.

---

[21] Rec. Doc. 12, at 28.

[22] *Id.* at 28–31.

**Understanding, remembering, or applying information.** The ALJ determined that Plaintiff has a moderate limitation in this area.[23] In arriving at this determination, she considered evidence from Dr. Scott Sondes, an internal medicine consultative examiner, who found that Plaintiff is able to read, write, count money, and do simple arithmetic; that he has a normal understanding, cooperation, concentration, and attention; normal memory, that he is oriented to person, place, time, and situation; that he has a normal memory, and that he did not show any visible nervousness or depressed mood.[24] She also considered evidence from Dr. Sentell, who found that Plaintiff was oriented to time, date, person, place, and situation; that his speech was normal and intelligible; that his thought processes were intact, logical, and coherent; and that this judgment was good. These findings are consistent with the description provided in the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(B)(1).

**Interacting with others.** The ALJ determined that Plaintiff has a moderate limitation in this area.[25] In arriving at this determination, she took into account Plaintiff's testimony that he does not participate in social activities and that he grocery shops late at night because he does not like to be around a lot of people.[26] She also relied on certain findings by Dr. Sentell, including that Plaintiff was calm and his eye contact was good during their 45 minute virtual call; that, although he reported that his mood was typically depressed and anxious, Dr. Sentell observed that his mood was euthymic at the evaluation; and that Plaintiff reported he did not have difficulty getting along with teachers or peers in school, coworkers or supervisors at work, and law enforcement or other

---

[23] Rec. Doc. 12, at 29.

[24] *Id.*

[25] *Id.* at 30.

[26] *Id.*

authority figures.[27] These findings are generally consistent with the description provided in the Listing. *See id.* § 12.00(B)(2).

**Concentrating, persisting, or maintaining pace.** The ALJ determined that Plaintiff has a moderate limitation in this area.[28] As support for this determination, the ALJ copy-and-pasted her recitation of both Dr. Sondes' and Dr. Sentell's findings in the "understanding, remembering, or applying information" area of mental functioning.[29] The Court acknowledges that there is some overlap between these two categories, but the duplicated analysis fails to take into account the full scope of this category and calls into question whether the ALJ was adequately specific when analyzing this area of mental functioning.[30] 20 C.F.R. § 404.1520a(e)(4). Notably absent from the ALJ's analysis is any discussion of how Plaintiff's disorder affects his ability to "sustain[] an ordinary routine and regular attendance at work" or "work[] a full day without needing more than

---

[27] *Id.*

[28] *Id.* at 30.

[29] *See id.* at 30–31.

[30] *Compare* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(E)(1),

> Understand, remember, or apply information (paragraph B1). This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning.

*with id.* § 12.00(E)(3),

> Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(B)(3).

**Adapting or managing oneself.** The ALJ determined that Plaintiff has a moderate limitation in this area.[31] In arriving at this determination, she took into account Plaintiff's testimony that he drove a motor vehicle for the purpose of picking up his prescriptions and that he forgets to wash his clothes and pay his bills.[32] She also relied on Dr. Sentell's report, which noted that Plaintiff lives alone, conducts indoor household chores, possesses a valid driver's license, has an awareness of hazards and safety, and maintains his own bank account.[33] These findings are generally consistent with the description provided in the Listing. *See id.* § 12.00(B)(4).

### c. The insufficient step three evaluation affected Plaintiff's substantial rights.

The Court acknowledges that it must defer to the ALJ's decision when substantial evidence supports it, even if it would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). However, "the substantial evidence review is not an uncritical 'rubber stamp' and requires 'more than a search for evidence supporting the [Commissioner's] findings.'" *Meador*, 2023 WL 6780523, at \*15 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). The Court is compelled to "scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Martin*, 748 F.2d at 1031 (internal citations omitted). While the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner, a "no substantial evidence" finding is appropriate if there is a "conspicuous absence of credible choices." *Jones v. O'Malley*,

---

[31] *Id.* at 31.

[32] *Id.*

[33] *Id.*

14

No. 24-50485, 2024 WL 5153582, at *1 (5th Cir. Dec. 18, 2024) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). But "[r]eversal is required only if [the plaintiff] demonstrates that the error affected her substantial rights, such as by showing she meets or appears to meet the Listing." *Coscarelli v. Saul*, No. SA-19-CA-1219-XR, 2021 WL 8053621, at *8 (W.D. Tex. Jan. 29, 2021); *see also Villarreal v. Comm'r of Soc. Sec.*, No. EP-17-CV-00288-ATB, 2018 WL 1833002, at *4 (W.D. Tex. Apr. 16, 2018) ("[A]n error at step three requires reversal only where a plaintiff meets, or appears to meet, a listing.").

As previously discussed, the ALJ insufficiently evaluated the effect of Plaintiff's mental impairment when assessing the "concentrating, persisting, or maintaining pace" area of mental functioning. Namely, the ALJ's analysis fails to address the extent to which Plaintiff's disability allows him to "sustain[] an ordinary routine and regular attendance at work" or "work[] a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(E)(3). The Court notes that the Listing expressly states that documentation of these examples is not required, but finds that the omission of this analysis is particularly prejudicial in this case given the corresponding omission of the following opinions included in Dr. Sentell's report: (1) "the likelihood of problematic social interactions in a traditional work setting is high due to depression, anxiety, paranoid thought process, and pain behaviors"; (2) "Mr. Miles's tolerance of 8-hour workday stressors is unlikely"; and (3) "His ability to maintain reliable attendance in a work [setting] is unlikely due to anxiety, depression, panic behaviors, poor exercise tolerance, fatigue and moderate paranoid thought process."[34]

---

[34] Rec. Doc. 12, at 951.

Considering that (i) in step three, Plaintiff is "disabled" if he has at least one extreme limitation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B); and (ii) an extreme limitation occurs when the claimant is not able to function in the respective area of mental functioning independently, appropriately, effectively, and on a sustained basis, *id.* § 12.00(F)(2)(e), the Court finds that remand is required because, based on the substantial evidence omitted from Dr. Sentell's report, Plaintiff "appears to meet" the extreme limitation criteria for Listing 12.04. *Villarreal*, 2018 WL 1833002, at *4 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

This finding is further bolstered by the ALJ's decision not to consider the evidence provided by Dr. Williams at step three. That omission is discussed below.

ii.    ***The ALJ misinterpreted medical evidence and improperly evaluated the opinion of Dr. Williams.***

a.  **Misinterpretation of medical evidence**

The ALJ, in determining the severity of Plaintiff's mental impairments, evaluated the assessments conducted by Dr. Williams and stated as follows:

> On June 23, 2022 and March 15, 2023, treating psychologist, Bertha Davis Williams, Ph.D., provided a Mental Residual Functional Capacity Assessment (Ex. 13F/2; 31F; except for the dates, the two documents are the same). She listed the claimant's primary diagnosis as Depressive Mood Disorder, and she assigned secondary diagnoses of Anxiety and Adjustment Disorder (Ex. 31F).
>
> She opined that the claimant had no limitations, mild limitations, marked limitations, or extreme limitations in social functioning, after which she explained that the claimant's psychological and physical conditions did not allow him to function effectively in social settings. She wrote that the claimant had no limitations, mild limitations, marked limitations, or extreme limitations with his activities of daily living, after which she explained that the claimant's diagnoses negatively impacted his ability to function in these areas. She wrote that the claimant had no limitations, mild limitations, marked limitations, or extreme limitations in understanding and memory, after which she explained that the

claimant was negatively impacted in these areas. She wrote that the claimant had no limitations, mild limitations, marked limitations, or extreme limitations in concentration, persistence, and pace, after which she wrote that the claimant's physical illness and resulting mental health diagnosis made him unable to meet those requirements (Ex. 31F).

(Rec. Doc. 12, at 36).

These statements reflect a misinterpretation and misrepresentation of the record for several reasons. First, the ALJ states that, except for their dates, the two Mental Residual Functional Capacity Assessments ("RFC Assessments") conducted by Dr. Williams "are the same."[35] This is incorrect. The first RFC Assessment, conducted June 23, 2022, lists a primary diagnosis of a severe and recurrent depressive mood disorder, and a secondary diagnosis of anxiety, and paragraphs one through four of the assessment assign the following ratings for their respective prompts: extreme limitations, marked limitations, marked limitations, extreme limitations.[36] The second RFC Assessment, conducted March 15, 2023, lists an additional secondary diagnosis of adjustment disorder and assigns the following ratings in paragraphs one through four: extreme limitations, severe limitations, extreme limitations, and extreme limitations.[37] In comparing the two RFC Assessments, it is evident that Plaintiff's mental impairments increased in severity between June 2022 and March 2023.

Next, it appears that the ALJ misinterpreted the RFC Assessment prompts and, as a result, misrepresented the evidence. By way of example, the first prompt of the RFC Assessment states, "The patient presently has no limitations, mild limitations, marked limitations, or extreme

---

[35] Rec. Doc. 12, at 36.

[36] *Id.*

[37] *Id.* at 1110.

limitations in social functioning as follows."[38] Dr. Williams indicated Plaintiff has "extreme limitations" by marking it as both "bold" and "underlined."[39] In her decision, however, the ALJ misrepresented Dr. Williams' opinion as being "that the claimant had no limitations, mild limitations, marked limitations or extreme limitations in social functioning . . . ."[40] This misrepresentation was made by the ALJ for each of the four paragraphs in the RFC Assessments in which Dr. Williams assigned a rating.[41]

While this Court may not "reweigh the evidence or substitute its judgment for that of the administrative fact finder,"[42] the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence. In *Brunson v. Astrue*, "the ALJ misstated the record when he stated that it contained no evidence of any ongoing psychiatric treatment and no evidence that Mr. Brunson was ever prescribed medication during the period in question." 387 F. App'x 459, 461 (5th Cir. 2010). The Fifth Circuit held that the error was harmless because "the record indicate[d] that Mr. Brunson took anti-depressant medication which controlled his symptoms of depression during the relevant time period," and "impairments that reasonably can be remedied or controlled by medication or treatment are not disabling." *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). Accordingly, the court found that "it would not be appropriate . . . to remand the case for the purpose of having the ALJ correct this misstatement." *Id.*

Unlike in *Brunson*, the record before this Court makes clear that, but for the ALJ's misinterpretation and subsequent misrepresentations, she may have arrived at a different

---

[38] *Id.* at 1110.

[39] *Id.*

[40] *Id.* at 36.

[41] *Compare id.*, ¶¶ 1–4, *with id.* at 1049, ¶¶ 1–4, and *id.* at 36.

[42] *Cook*, 750 F.2d at 392.

conclusion as to whether Dr. Williams' medical evidence is persuasive. This is so for the following reasons. First, as it relates supportability and consistency—the two most important factors when considering medical opinions—Dr. Williams' medical evidence supports, is supported by and is consistent with the medical opinions of Dr. Sentell. *See* 20 C.F.R. § 404.1520c(b)(2). This is discussed at greater length *infra* Section IV(ii)(b). Second, the record reflects that Dr. Williams, who is a Ph.D. and licensed professional counselor, treated Plaintiff for his mental impairments via psychotherapy at least 14 times over the course of 13 months, which bolsters the significance of her relationship with Plaintiff.[43] *See id.* § 404.1520c(c)(1)–(4). Finally, by considering the two RFC Assessments "the same" rather than as two separate assessments conducted over the course of a year's worth of treatment, the ALJ failed to consider the significance of Dr. Williams' opinion changing over time.

Accordingly, Court finds that that ALJ's misinterpretation and misrepresentation of this evidence substantially affected Plaintiff's rights. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

**b. Improper evaluation of Dr. Williams' medical opinion**

The ALJ's treatment of medical opinions is governed by the revised regulations for social security benefits claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a). As the decision notes, under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion(s), including those from treating medical sources."[44] *See also Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018). Instead, ALJs must "articulate in [their] determination or decision how persuasive [they] find all

---

[43] *See id.* at 1111-1118.

[44] *Id.* at 36.

of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). This requirement is obligatory for claims filed on or after March 27, 2017. *See id.* § 404.1520c(a). Because Plaintiff applied for disability insurance benefits on March 19, 2021, the revised regulations apply to his claim.

The ALJ must consider all medical opinions in the record and evaluate their persuasiveness applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* § 404.1520c(c). The most important of these factors are supportability and consistency. *See id.* § 404.1520c(a).

The ALJ is specifically required to explain how he or she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly. *See id.* § 404.1520c(b)(2). "Supportability concerns the degree to which the objective medical evidence and supporting explanations of the medical source support [their] own opinions, while consistency concerns the degree to which the medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources within the record." *Wallace v. Kijakazi*, No. 3:22-CV-0820-X-BH, 2023 WL 2795854, at *8 (N.D. Tex. Mar. 20, 2023) (citing 20 C.F.R. §§ 404.1520c(c)(1), (2); 416.920c(c)(1), (2)), *report and recommendation adopted*, 2023 WL 2801207 (N.D. Tex. Apr. 5, 2023); *see also Simon v. Kijakazi*, No. CV 22-3101, 2023 WL 2562754, at *7 (E.D. La. Mar. 17, 2023) (noting the supportability factor hinges on relevance: "the more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the [opinion or finding] will be") (quoting 20 C.F.R. § 404.1520c(c)(1)).

"The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether h[er] finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the [c]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Wallace*, 2023 WL 2795854, at *9 (citing *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021)) (citations omitted); *see also Wactor v. Comm'r of Soc. Sec.*, No. 1:21-CV-170, 2023 WL 2484314, at *4 (E.D. Tex. Jan. 19, 2023), *adopted*, 2023 WL 2479619 (E.D. Tex. Mar. 12, 2023). In other words, "there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Cooley*, 587 F. Supp. 3d at 499.

After omitting Dr. Williams' evidence from her disability analysis in step three, the ALJ states, in a subsequent section, that Dr. Williams' "treatment notes do not provide ample support [for] her opinion" and her "opinion is not consistent with the medical record."[45] As a result, the ALJ determined that Dr. Williams' opinion is not persuasive.[46] In particular, the ALJ states that the notes "do not support the marked or extreme limitations assessed [in Dr. Williams' assessments] and do not support an inability to comply with a work schedule."[47] As support for this statement, she uses the following examples:

> For instance, after the session on June 2, 2022, [Dr. Williams] wrote that the claimant told her he went to the doctor and got "a little depressed". The claimant stated that he was more anxious (Ex.

---

[45] *Id.* at 36.

[46] *Id.* at 37.

[47] *Id.* at 36.

> 32F/5). On November 10, 2022, the claimant reported that he had
> been stressing over finances. He explained that property taxes were
> due and he could not come up with the money. The claimant told
> Dr. Williams that some of his female friends called him and asked
> him to hang out with them, but he could not do that because he did
> not have any money (Ex. 32F/6-7).

(Rec. Doc. 12, at 36).

But omitted psychotherapy notes from the same days as she cites above show the opposite

side of the same coin and, contrary to the ALJ's finding, support Dr. Williams' assessments. For

example, on June 2, 2022, the notes also reflect Plaintiff stating "Since all that happened I am more

anxious. I still get winded. The neuropathy is still painful. Now I am in the house with no lights,

no TV, and I don't want to be bothered."[48] And on November 10, 2022, the ALJ omitted the

following lines from the notes: "My daughter need things I can't give her and its depressing. I have

been laying in the bed in the dark and worrying, thinking and asking God why I am here. I am not

any good to nobody"; and "I don't want to depend on them for anything. Sometimes I have chest

pains."[49] As a result of these omissions, the Court is left unable to meaningfully review the ALJ's

explanation as it relates to supportability. *Wallace*, 2023 WL 279584, at *9.

Regarding the inconsistencies between Dr. Williams' opinion and the medical record, the

ALJ principally states that Dr. Sentell's opinion refutes that of Dr. Williams for the following

reasons:

> Dr. Sentell opined that the claimant's fund of information was fair,
> his concentration and sustained attention were within normal limits,
> his persistence was good, and his pace was within normal limits. Dr.
> Sentell found that the claimant's performance on vocabulary,
> mathematics, and spelling tasks suggested average intellect, his
> abstraction skills were good, and his comprehension was good. He
> noted that the claimant lived alone in a single-family home, that the

---

[48] *Id.* at 1115–1116.

[49] *Id.* at 1116–1117.

> claimant completed indoor household chores including cleaning and
> light cooking, that he was able to maintain adequate grooming and
> hygiene without assistance, that he had a valid driver's license, and
> that he had access to a motor vehicle (Ex. 7F/4).

(Rec. Doc. 12, at 36–37). But this analysis fails to address whether Plaintiff's mental impairment

prevents him from regularly attending work or being capable of regularly working a full day. *See*

20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00(E)(3). And, as previously discussed, the ALJ did not

analyze the significant *consistencies* between the two providers—*i.e.*, that both psychologists

agreed that Plaintiff's impairments (i) prevent him from working an 8 hour day, (ii) significantly

affect his ability to socially interact in a traditional work setting, and (iii) make it unlikely that he

can regularly attend work.[50] Nor did she consider that Dr. Roland Waguespack, although not a

psychologist, similarly found that Plaintiff (i) has limitations working with the public, supervisors,

or coworkers; (ii) has limitations working in a stressful environment; and (iii) that Plaintiff's pain

and fatigue prevent him from working 8 hours a day.[51]

    The Court acknowledges that the ALJ does "not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a).

However, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and

choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir.

2000). "[H]armless error exists when it is inconceivable that a different administrative conclusion

would have been reached absent the error." *Jones v. Saul*, No. 19-CV-880, 2020 WL 5752390, at

*18 (N.D. Tex. Aug. 24, 2020) (applying harmless error standard to factual errors made in the RFC

analysis), *report and recommendation adopted*, 2020 WL 5747873, at *1 (N.D. Tex. Sept. 25,

---

[50] *Compare id.* at 951, *with id.* at 1049, 1110.

[51] *Id.* at 1047.

2020). For the foregoing reasons, it is difficult to conclude that, if further considered, a different outcome would be "inconceivable." *Id.* Rather, further consideration of Dr. Williams' opinion alongside other evidence in the record could conceivably result in a different conclusion following remand. Most importantly, however, "Even if the Commissioner is correct and the ALJ reaches the same conclusion on remand, the Fifth Circuit has rejected the notion that such a circumstance warrants affirmation of an initial decision improperly reached." *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *5 (N.D. Tex. Mar. 14, 2022), *report and recommendation adopted,* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022); *see also Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990).

## V.    CONCLUSION

Because the ALJ (i) deviated from applicable legal standards by insufficiently examining an area of mental functioning in step three of the sequential evaluation process, (ii) misinterpreted medical evidence in a manner that may have prejudiced Plaintiff's substantial rights; and (iii) discredited Dr. Williams' medical opinion without substantial evidence, the Court is left unable to conduct a meaningful and procedurally proper judicial review.

Accordingly;

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

January 7, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE